# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| CALVIN V. SANDERS,<br><br>      Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>      Respondent. | Case No. 18-CV-919-JPS<br>Crim. Case No. 14-CR-28-1-JPS<br><br>**ORDER** |

  Petitioner Calvin V. Sanders ("Sanders") pleaded guilty to one count of wire fraud and one count of aggravated identity theft, as part of a scheme to fraudulently obtain unemployment insurance benefits from the State of Wisconsin. *United States v. Calvin V. Sanders*, 14-CR-28-1-JPS (E.D. Wis.) (the "Criminal Case"), (Docket #64). On December 16, 2014, the Court sentenced him to 52 months of imprisonment on the wire fraud count, to be followed by 24 months on the identity theft count, for a total term of 76 months of imprisonment, to be followed by five years of supervised release. *Id.*, (Docket #123). The sentence on the wire fraud count reflected a downward adjustment of eight months from the 60-month sentence the Court would have otherwise imposed pursuant to U.S.S.G. § 5G1.3(B) to ensure that Sanders received credit for time he spent in state custody on a related revocation proceeding which the Bureau of Prisons ("BOP") would not have otherwise credited under 18 U.S.C. § 3585(b). *Id.* at 2. The Court further ordered Sanders and his co-defendants to pay over $350,000 in restitution to the Wisconsin Department of Workforce Development. *Id.*

  Sanders appealed. On June 25, 2015, the Court of Appeals issued its mandate granting a joint motion of the parties for summary reversal. *Id.*,

(Docket #139). The parties agreed that the Court had not explained its reasoning for imposing certain conditions of supervised release. *Id.* On March 23, 2016, the Court held a new sentencing hearing and resentenced Sanders to precisely the same terms. *Id.*, (Docket #162). Sanders took another appeal. The Court of Appeals again reversed, this time on the ground that the maximum allowable period of supervised release was only three years. *Id.*, (Docket #172). The Seventh Circuit directed the Court to amend its judgment to reflect a three-year term of supervised release, which was done on July 12, 2017. *Id.*, (Docket #173). No further appeals were taken.

On June 18, 2018, Sanders filed a motion pursuant to 28 U.S.C. § 2255 to vacate, modify, or correct his sentence. (Docket #1). That motion is now before the Court for screening. At the screening stage,

> [i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b), Rules Governing Section 2255 Proceedings. The Court accepts as true the petitioner's well-pleaded factual allegations, but not any of his legal conclusions. *See Gibson v. Puckett*, 82 F. Supp. 2d 992, 992 (E.D. Wis. 2000).

Upon Rule 4 review, the Court ordinarily analyzes preliminary procedural obstacles, such as whether the petitioner has complied with the statute of limitations, avoided procedural default, and set forth cognizable claims. If those issues do not preclude a merits review of the claims, the Court directs the government to respond to the petition. Yet here, for the reasons explained below, the Court can fully dispose of Sanders' motion on

(Docket #139). The parties agreed that the Court had not explained its reasoning for imposing certain conditions of supervised release. *Id.* On March 23, 2016, the Court held a new sentencing hearing and resentenced Sanders to precisely the same terms. *Id.*, (Docket #162). Sanders took another appeal. The Court of Appeals again reversed, this time on the ground that the maximum allowable period of supervised release was only three years. *Id.*, (Docket #172). The Seventh Circuit directed the Court to amend its judgment to reflect a three-year term of supervised release, which was done on July 12, 2017. *Id.*, (Docket #173). No further appeals were taken.

On June 18, 2018, Sanders filed a motion pursuant to 28 U.S.C. § 2255 to vacate, modify, or correct his sentence. (Docket #1). That motion is now before the Court for screening. At the screening stage,

> [i]f it plainly appears from the motion, any attached exhibits, and the record of the prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion and direct the clerk to notify the moving party. If the motion is not dismissed, the judge must order the United States Attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

Rule 4(b), Rules Governing Section 2255 Proceedings. The Court accepts as true the petitioner's well-pleaded factual allegations, but not any of his legal conclusions. *See Gibson v. Puckett*, 82 F. Supp. 2d 992, 992 (E.D. Wis. 2000).

Upon Rule 4 review, the Court ordinarily analyzes preliminary procedural obstacles, such as whether the petitioner has complied with the statute of limitations, avoided procedural default, and set forth cognizable claims. If those issues do not preclude a merits review of the claims, the Court directs the government to respond to the petition. Yet here, for the reasons explained below, the Court can fully dispose of Sanders' motion on

screening, as only one of Sanders' claims has merit and relief can be granted on that claim summarily, without the added expense and delay of further proceedings.[1]

1. **TIMELINESS**

The Court begins by addressing the timeliness of Sanders' motion. Section 2255(f) provides a one-year limitations period in which to file a motion thereunder. 28 U.S.C. § 2255(f). That period runs from the date on which the judgment of conviction becomes final. "[T]he Supreme Court has held that in the context of postconviction relief, finality attaches when the Supreme Court 'affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires.'" *Robinson v. United States*, 416 F.3d 645, 647 (7th Cir. 2005) (quoting *Clay v. United States*, 537 U.S. 522, 527 (2003)). Sanders' motion was filed just over eleven months after the Court issued its latest amended judgment. Thus, it appears to be timely.

2. **PROCEDURAL DEFAULT**

The Court next considers whether Sanders' claims suffer from procedural default. Section 2255 relief is appropriate if the Court determines that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). However, this form of action is not a substitute for a direct appeal. *Varela v. United States*, 481 F.3d 932, 935 (7th Cir. 2007). Therefore, any claims

---

[1] Along with his motion, Sanders filed a request for leave to proceed without prepayment of the filing fee in this action. (Docket #2). There is no filing fee for a proceeding under Section 2255, so the Court will deny the motion as moot.

that Sanders did not raise at trial or on direct appeal are procedurally defaulted and he cannot raise them. *Torzala v. United States*, 545 F.3d 517, 522 (7th Cir. 2008).

There are two exceptions to this rule. First, claims of ineffective assistance of counsel may be raised for the first time in a Section 2255 motion. *Massaro v. United States*, 538 U.S. 500, 504 (2003). Second, Sanders may raise a claim on which he otherwise procedurally defaulted if he demonstrates that there was cause for his failure to raise the claim earlier and that the failure has actually prejudiced him. *Torzala*, 545 F.3d at 522 (citing *Bousley v. United States*, 523 U.S. 614, 621 (1998)).

To evaluate the issue of procedural default, the Court must briefly identify each of Sanders' claims. He asserts four grounds for relief in his motion. In Ground One, he claims that the BOP has denied him full sentence credit for time spent in state custody. (Docket #1 at 7–8). He contends that receipt of this credit was contemplated in his plea agreement, and it was the Court's intention to provide such credit at the time of sentencing. *Id.* Sanders says that the probation officer at the sentencing hearing erroneously advised the Court that the BOP would allow him full credit for his time in state custody, when in reality it shorted that credit by ninety days. *Id.*

Grounds Two and Four assert claims of ineffective assistance of counsel against Sanders' trial and appellate counsel, respectively. *Id.* at 8–10. Sanders contends that his trial counsel's errors led to his two incorrect sentences, and that appellate counsel failed to catch the improper term of supervised release on the first appeal and failed to raise the issue of sentence credit discussed above. *Id.*

Finally, Ground Three alleges that Sanders' plea was invalid because of various errors committed by his trial counsel. *Id.* at 9. He charges that his trial counsel erred in not objecting to certain aspects of his presentence report, including the amount of restitution he owed and the two-point Guideline enhancement based on the existence of ten or more victims of his offense. *See* U.S.S.G. § 2B1.1(b)(2)(A). He also claims that his counsel was ineffective for not ensuring that he was present for a restitution hearing and for not succeeding in arguing his motion to withdraw his guilty plea. (Docket #1 at 9). Sanders asserts that these errors of action and advice rendered his guilty plea invalid because it was not knowing, intelligent, and voluntary. *Id.*

Some of these claims are not properly cognizable or lack plausible merit, but for purposes of procedural default, all survive. Grounds Two and Four are claims of ineffective assistance of counsel and so may be lodged for the first time in this proceeding. Ground Three, while grounded in the validity of Sanders' plea, is functionally a claim of ineffective assistance of counsel, and so it too avoids procedural default. *See Gaylord v. United States*, 829 F.3d 500, 506 (7th Cir. 2016). Similarly, as will be explained further below, the sentence credit problem posed in Ground One can be framed as an ineffective assistance claim. Thus, Sanders' claims do not appear to be procedurally defaulted.

3. **COGNIZABILITY**

Having determined that Sanders' claims do not fall to the statute of limitations or procedural default, the Court will finally consider whether the claims are cognizable and non-frivolous. The Court will address each claim in turn.

### 3.1 Ground One: Sentence Credit

In Ground One, Sanders argues that the BOP has not given him all of the sentence credit he deserves for time served in state custody in connection with the state revocation proceeding. (Docket #1 at 7–8). To the extent he challenges the BOP's calculation of his sentence credit, his claim is not cognizable in a Section 2255 motion. The Attorney General, via its designee, the BOP, has sole authority to award credit for pre-sentence time served, *United States v. Wilson*, 503 U.S. 329, 333–36 (1992), and the BOP's decision can only be reviewed via a federal habeas petition pursuant to 28 U.S.C. § 2241, *Romandine v. United States*, 206 F.3d 731, 736 (7th Cir. 2000). A Section 2241 petition can only be filed in federal district court which has jurisdiction over the prisoner's custodian. For Sanders, that is the Eastern District of California.[2]

But there is another facet of Ground One the Court does have the power to address. Recall that Sanders believes the Court was misled by the Probation Office about the amount of credit the BOP would award. He therefore thinks that the Court committed an error by adopting a too-short downward adjustment under U.S.S.G. § 5G1.3(b) for his wire fraud conviction. He asks that the Court retroactively increase the 8-month downward adjustment it has already taken on that count by an additional

---

[2]To be sure, a Section 2241 petition in Sanders' case is likely to go nowhere. He has already petitioned the BOP for additional sentence credit, and the agency explained that no credit would be given because the time in question had been credited against a sentence of imprisonment imposed by the State of Wisconsin in another case. (Docket #1-1 at 20). That time cannot be double-counted as credit toward his federal sentence. 18 U.S.C. § 3585(b) ("A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences that has not been credited against another sentence.").

90 days. Conceived in this way, Sanders' request is properly lodged under Section 2255, which can function to remedy errors in the application of U.S.S.G. § 5G1.3(b) at sentencing. *See Gravitt v. Veach*, 229 F. App'x 417, 418 (7th Cir. 2007).

Sanders' request for relief faces another major obstacle, however: he did not assert this purported Guidelines error in either of his appeals. "[C]laims premised on the sentencing guidelines, absent 'extraordinary circumstances,' can only be raised on direct appeal." *Id.* at 419 (quoting *Scott v. United States*, 997, F.2d 340, 343 (7th Cir. 1993)). Yet it is possible for a prisoner to raise a Guidelines issue in a collateral attack so long as he can demonstrate that the failure to raise it on direct appeal resulted from the ineffective assistance of his counsel. *Allen v. United States*, 175 F.3d 560, 563 (7th Cir. 1999); *Martin v. United States*, 109 F.3d 1177, 1178 (7th Cir. 1996). To succeed on a claim of ineffective assistance, "a prisoner must prove (1) his attorney's performance fell below an objective standard of reasonableness, and (2) he suffered prejudice as a result." *Wyatt v. United States*, 574 F.3d 455, 457–58 (7th Cir. 2009) (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 693 (1984)). Sanders makes such an allegation in this case against his appellate counsel, although it is quite bare-bones; he does not explain how appellate counsel should have recognized the error when every other party to the sentencing missed it. *See* (Docket #1 at 9–10). Further, it would not appear Sanders suffered significant prejudice, as he is complaining of a 90-day discrepancy in relation to a total sentence of 76 months of imprisonment. Yet the Supreme Court has recognized that even minor errors in Guidelines ranges can give rise to actionable prejudice, *Glover v. United States*, 531 U.S. 198, 203 (2001), and so the Court will permit Sanders

to proceed on his claim for additional downward adjustment on a theory of ineffective assistance of appellate counsel.

Having traced a path through these preliminary obstacles, the Court finds that it is appropriate to grant Sanders part of the relief he seeks. The request must be granted in part and denied in part because while Sanders is correct that the downward adjustment was too short, it was not short by ninety days, as he seems to believe. Instead, it was only forty days shy of the correct number. To understand this conclusion, it is necessary to first review the relevant timeline of Sanders' custody in connection with his criminal case and the related state proceeding.

Sanders entered state custody on September 23, 2013. A federal detainer was issued on April 2, 2014, but he remained in state custody until June 30, 2014. The period from September 23, 2013, to June 30, 2014 was 280 days. He was released into federal custody and remained in federal custody for a very short period, from July 1 to July 9, 2014. He was released on bond in connection with the federal prosecution on July 9, 2014. He voluntarily surrendered to begin serving his federal sentence on January 22, 2015.

BOP gave Sanders pre-sentence credit only for the nine days he spent in federal custody from July 1 to July 9, 2014, since the 280 days from September 23, 2013 to June 30, 2014 were being credited toward Sanders' state revocation sentence. Because BOP would not give Sanders credit for that lengthy period of incarceration, the Court decided at sentencing that it would make a downward adjustment pursuant to U.S.S.G. § 5G1.3(b). The Court's downward adjustment was eight months, or 240 days.

It seems every party's arithmetic was a bit wrong. First, the Probation Office representative at the original sentencing hearing advised the Court that Sanders would receive credit from BOP for the time he spent

under a federal detainer, from April 2, 2014 until June 30, 2014. *See* (Docket #133 at 20). That is not correct; Sanders needed to be in federal custody to receive credit, and a federal detainer does not equate to being in federal custody. *See Thomas v. Whalen*, 962 F.2d 358, 360 (4th Cir. 1992); *Bloomgren v. Belaski*, 948 F.2d 688, 690 (10th Cir. 1991); *United States v. Mills*, 501 F.3d 9, 12 (1st Cir. 2007). Moreover, that time was credited against his state sentence, so it could not be credited against the federal sentence in any event. 18 U.S.C. § 3585(b); *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir. 1995). On top of that, it appears that the probation officer proposed a downward adjustment of eight months to account for the period from September 23, 2013 to April 2, 2014, which she believed would not be credited by BOP. But that period of time is only 191 days, or just over six months. It is not eight months.

Second, the Court's downward adjustment did not match up with Sanders' actual time spent in state custody, perhaps largely because of the Probation Office's miscalculations. The Court's downward adjustment was substantial, to be sure, but was short of the actual time Sanders spent in state custody by forty days.

Finally, Sanders' present submissions also suffer from mathematical error. He proposes that BOP did not credit him for the period of April 2, 2014 to June 30, 2014, or 89 days. (Docket #3 at 5). This is true, but irrelevant. BOP did not credit *any* of the time he spent in state custody, including the preceding period from September 23, 2013 to April 2, 2014. Thus, Sanders' request for ninety additional days of credit is misguided, though perhaps understandable given everyone else's confusion on the matter.

In the end, prior errors do not prevent the Court from taking appropriate rectifying action at this juncture. Given the calculations laid out

under a federal detainer, from April 2, 2014 until June 30, 2014. *See* (Docket #133 at 20). That is not correct; Sanders needed to be in federal custody to receive credit, and a federal detainer does not equate to being in federal custody. *See Thomas v. Whalen*, 962 F.2d 358, 360 (4th Cir. 1992); *Bloomgren v. Belaski*, 948 F.2d 688, 690 (10th Cir. 1991); *United States v. Mills*, 501 F.3d 9, 12 (1st Cir. 2007). Moreover, that time was credited against his state sentence, so it could not be credited against the federal sentence in any event. 18 U.S.C. § 3585(b); *United States v. McGee*, 60 F.3d 1266, 1272 (7th Cir. 1995). On top of that, it appears that the probation officer proposed a downward adjustment of eight months to account for the period from September 23, 2013 to April 2, 2014, which she believed would not be credited by BOP. But that period of time is only 191 days, or just over six months. It is not eight months.

Second, the Court's downward adjustment did not match up with Sanders' actual time spent in state custody, perhaps largely because of the Probation Office's miscalculations. The Court's downward adjustment was substantial, to be sure, but was short of the actual time Sanders spent in state custody by forty days.

Finally, Sanders' present submissions also suffer from mathematical error. He proposes that BOP did not credit him for the period of April 2, 2014 to June 30, 2014, or 89 days. (Docket #3 at 5). This is true, but irrelevant. BOP did not credit *any* of the time he spent in state custody, including the preceding period from September 23, 2013 to April 2, 2014. Thus, Sanders' request for ninety additional days of credit is misguided, though perhaps understandable given everyone else's confusion on the matter.

In the end, prior errors do not prevent the Court from taking appropriate rectifying action at this juncture. Given the calculations laid out

above, as well as the Court's previously expressed desire to afford Sanders credit for the entire time he spent in state custody pursuant to U.S.S.G. § 5G1.3(b) which BOP would not otherwise credit under 18 U.S.C. § 3585(b), the Court will grant Sanders relief on Ground One of his motion. Placed in the context of that claim, the Court finds that appellate counsel performed deficiently in failing to raise the downward adjustment issue on appeal. *Strickland*, 466 U.S. at 690. Given that Sanders has not been afforded all the credit he is due, this caused him actionable prejudice. *Glover*, 531 U.S. at 203. As a result, the Court will issue an amended judgment forthwith which includes an additional downward adjustment of two months, rounded up from forty days in view of the normal practice of expressing terms of imprisonment in months.

Two final matters require attention in connection with sentence credit. First is Sanders' motion seeking to correct the downward adjustment miscalculation as a "clerical error" pursuant to Federal Rule of Criminal Procedure 36. (Docket #3). Even had the motion been docketed in the criminal action, as it should have been, it would be denied, since no clerical error has occurred. It is well-settled that "Rule 36 is not a vehicle for the vindication of the court's unexpressed sentencing expectations, or for the correction of 'errors made by the court itself.'" *United States v. Werber*, 51 F.3d 342, 347 (2d Cir. 1995) (quoting *United States v. Daddino*, 5 F.3d 262, 264 (7th Cir. 1993)). Rule 36 instead covers scrivener's errors relating to the transcription of the sentencing court's oral pronouncement. *United States v. Guevremont*, 829 F.2d 423, 426 (3d Cir. 1987). A motion for relief under Rule 35 would have been better suited to Sanders' request, but the 14-day deadline to file such a motion has long since passed. Fed. R. Crim. P. 35(a).

Second, the Court cannot entertain Sanders' add-on requests in his motion for an increased downward adjustment based on his ongoing rehabilitation efforts or a recommendation for placement in a halfway house. (Docket #1 at 11). Such modifications are barred by 18 U.S.C. § 3582(c), which sharply curtails a sentencing court's ability to retroactively modify terms of imprisonment once imposed. *Dillon v. United States*, 560 U.S. 817, 819 (2010). Section 3582(c) provides three exceptions to the general rule that a term of imprisonment may not be modified once imposed, but none apply here. 18 U.S.C. § 3582(c)(1)–(3); *Walters v. United States*, 495 F. Supp. 2d 577, 580 (S.D. W. Va. 2006) (finding that sentence reduction for rehabilitation efforts is not authorized by Section 3582(c)).

Further, on remand from the first reversal by the Court of Appeals, Sanders made similar arguments for additional downward adjustment. Criminal Case, (Docket #164 at 14–16). The Court thought it was not able to entertain a request for an additional downward adjustment under the terms of the remand, but it also noted that the request would have been denied in any event as it was unwarranted on the facts. *Id.* The Court maintains that view; if Sanders wants his good behavior to lead to reduced time spent in custody or a halfway house placement, only the BOP can consider such requests.

### 3.2 Grounds Two and Four: Ineffective Assistance

In Grounds Two and Four, Sanders seeks a declaration that his trial and appellate counsel were constitutionally ineffective. *See* (Docket #1 at 11). These claims must be dismissed, as Section 2255 does not exist to charge attorneys with incompetence absent some actionable prejudice to the prisoner. As explained above, a party asserting an ineffective assistance claim must prove two elements: "(1) that his. . .counsel's performance fell

below objective standards for reasonably effective representation, and (2) that counsel's deficiency prejudiced the defense." *Blake v. United States*, 723 F.3d 870, 879 (7th Cir. 2013). Even at screening, it is indisputable that, regardless of the quality of representation Sanders received, it caused him no prejudice. The issues with his supervised release term were corrected through his two appeals. As to the sentence credit issue, he is being granted the appropriate relief he is due. There is no reason to continue to pursue that claim or to duplicate it, and so Grounds Two and Four can be dismissed in their entirety.

### 3.3 Ground Three: Validity of Sanders' Guilty Plea

In Sanders' final ground for relief, Ground Three, he claims that his plea was not knowing, voluntary, and intelligent because his trial counsel was ineffective. (Docket #1 at 9). He contends that his counsel was ineffective in failing to properly advise him and advocate on his behalf regarding the amount of restitution and the ten-victim Guidelines enhancement. *Id.* He further asserts that counsel was deficient in advocating for his original request to withdraw his plea based on the government's failure to seek a downward adjustment for his substantial assistance. *Id.* Finally, he claims that counsel failed to inform him about a restitution hearing in his case. *Id.*[3] He seeks the elimination of his restitution obligation and resentencing without the 10-victim enhancement. *Id.* at 11.

---

[3] The government did, in fact, request a restitution hearing with respect to Sanders' co-defendants, Criminal Case, (Docket #92), but the hearing was never held. The minutes of the sentencing hearings for Sanders' co-defendants reflect that the parties' disagreements regarding restitution were resolved without the hearing. *See id.*, (Docket #96 at 1); *id.*, (Docket #106 at 1). This portion of Sanders' claim lacks a colorable factual basis and need not be discussed further.

A valid guilty plea must be made voluntarily, intelligently, and knowingly. *Brady v. United States*, 397 U.S. 742, 747 (1970). A plea is voluntary when it is not induced by threats or misrepresentations, and the defendant is made aware of the direct consequences of the plea. *United States v. Jordan*, 870 F.2d 1310, 1317 (7th Cir. 1989). A plea is knowing and intelligent when the defendant is competent, aware of the charges, and advised by competent counsel. *Id.* In a case such as this, where Sanders ties the validity of his plea to the advice and advocacy of his counsel, his claim is analyzed using the deficient-performance and prejudice test applied to Sixth Amendment ineffective assistance claims. *Brock-Miller v. United States*, 887 F.3d 298, 308 (7th Cir. 2018); *Galbraith v. United States*, 313 F.3d 1001, 1006 & n.1 (7th Cir. 2002). Prejudice in the context of a guilty plea requires a showing that but for counsel's deficient performance, Sanders would not have pleaded guilty. *Tezak v. United States*, 256 F.3d 702, 712 (7th Cir. 2001). However, "this analysis takes place in the context of the presumption that an attorney's conduct is reasonably proficient." *Id.*; *Gaylord*, 829 F.3d at 506.

Sanders' attack on his plea is a transparent attempt to revise history, and it will be rejected. In his plea agreement, signed by Sanders on June 25, 2014, he admitted guilt to the relevant charges as well as the factual bases therefor. Criminal Case, (Docket #64 at 1–2, 13–19). He also acknowledged the application of the ten-victim Guidelines enhancement and agreed to pay the amount of restitution the Court ultimately ordered. *Id.* at 5, 8. Finally, the agreement contains multiple acknowledgements by Sanders that he entered into it knowingly, freely, and voluntarily. *See, e.g., id.* at 12–13.

All of these issues were further addressed in the Court's colloquy at the change of plea hearing. *Id.*, (Docket #132). At the hearing, Sanders stated under oath that he was satisfied with trial counsel's advice, *id.* at 8, that he

discussed the plea agreement with his counsel prior to signing it, *id.* at 9, and that he freely and voluntarily wished to plead guilty because he was in fact guilty, *id.* at 9–10. Sanders also acknowledged that he would be liable for the amount of restitution the Court ultimately ordered. *Id.* at 11–12. All of these sworn statements by Sanders are presumed truthful, and other than his present desire to renege on his agreement, Sanders offers no reason to doubt the veracity of these earlier statements. *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000); *United States v. Arroyo*, 219 F. App'x 516, 519 (7th Cir. 2007) ("[A] guilty plea is no less voluntary just because the defendant becomes disgruntled about the outcome at sentencing.").

If this were not enough, Sanders' plea was addressed again at the December 16, 2014 sentencing hearing (the first such hearing in his case). Prior to that hearing, Sanders filed a motion to withdraw his guilty plea. Criminal Case, (Docket #120). Sanders argued that during his plea negotiations, the government had promised to move to reduce his sentence for his substantial assistance, but then refused to file the motion at the time of sentencing. *Id.* After hearing arguments from counsel, the Court rejected Sanders' motion as "unadulterated hogwash." *Id.*, (Docket #133 at 7). The Court noted that Sanders was given significant credit in his Guidelines calculation for pleading guilty. *Id.* Further, the plea agreement itself made no promise of a substantial assistance motion. *Id.*, (Docket #64 at 8). Sanders' attempt at cooperation with the government came very late and so the government was justified in not filing such a motion. *Id.*, (Docket #133 at 7–8). Finally, the Court found that the motion was in direct contradiction of Sanders' testimony at the change of plea hearing. *Id.* at 8.

Thus, contrary to Sanders' belief, counsel was not ineffective in his advocacy on the plea withdrawal motion. Instead, the motion was without

any hope of success. Why counsel felt obligated to file the motion anyway—he said it was because of a prior decision of the Seventh Circuit involving his representation of another defendant, *id.* at 3—is immaterial. Sanders cannot show that the result would have been different if counsel had argued more vociferously. *Strickland*, 466 U.S. at 694.

The Court then proceeded to conduct the sentencing. During that portion of the hearing, Sanders acknowledged that he read the presentence report and that he had no objections to the facts stated therein. Criminal Case, (Docket #133 at 9). Among other things, the presentence report described Sanders' role in the offenses to which he pleaded guilty and explained his Guidelines calculations, including the ten-victim enhancement and the amount of, and basis for, the imposition of restitution. *Id.*, (Docket #116). Sanders expressed no concern with those matters and the Court accepted them. *Id.*, (Docket #133 at 10). In his brief allocution, Sanders made no mention of any issues with trial counsel, problems with the Guidelines calculation, or disputes concerning the proposed restitution figure. *Id.* at 16–17.

Even if Sanders is right that his lawyer's advice on these matters was flawed, it is telling that Sanders himself did not take the opportunity he was given to speak about them. It is not as though he discovered counsel's errors only after sentencing. Sanders read the presentence report, knew its contents, and claims he wanted to lodge objections to the restitution figure and the ten-victim enhancement at the time of sentencing. Yet he remained silent. The Court will not entertain his newfound revisionist approach. Moreover, the core inquiry is whether Sanders' plea was voluntary when it was entered, not whether he rethought the wisdom of the plea upon

reading the presentence report. *See United States v. Underwood*, 174 F.3d 850, 854 (7th Cir. 1999).

Furthermore, the Court finds no merit in the objections Sanders wanted to raise against the presentence report, even giving his allegations a liberal construction, as it is required to do. *Frazier v. Varga*, 843 F.3d 258, 262 (7th Cir. 2016). He claims that he wanted his lawyer to note his "disagreement with the amount of money that was involved," (Docket #1 at 9), but he does not describe in any fashion the basis for his disagreement. The Probation Office's thorough investigation into the restitution figure belies his bald claim. *See* Criminal Case, (Docket #116 at 10–12). Likewise, his threadbare assertion that there "was not any monetary loss" to his victims, (Docket #1 at 9), thereby taking him under the ten-victim threshold set by the Guidelines, is ludicrous and contradicted by the Probation Office's careful analysis, *see* Criminal Case, (Docket #116 at 16–17). Counsel cannot be ineffective for failing or refusing to raise meritless objections. *See Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994) ("Failure to raise meritless objections is not ineffective lawyering; it is the very opposite."); *United States v. Rezin*, 322 F.3d 443, 446 (7th Cir. 2003) (a defense attorney has "no duty to make a frivolous argument" and often has appropriate tactical reasons not to make a weak one in favor of others).

In sum, it is abundantly clear that Sanders' plea was knowing, intelligent, and voluntary, and that he was satisfied with his counsel's advice in that regard. If Sanders had any concerns with his plea, he kept them entirely to himself throughout the plea and sentencing process. The Court will not allow him to return, years later, to unearth those issues and perjure himself in the process (at least with respect to his testimony at the change of plea hearing). Nor does the Court detect a shred of merit in

Sanders' belief that his counsel performed deficiently. Ground Three must be dismissed.

## 4. CONCLUSION

For the reasons stated above, the Court will grant in part Sanders' request for relief under Ground One, but only insofar as he seeks correction of the Court's downward adjustment under U.S.S.G. § 5G1.3(b). The Court will issue an amended judgment for Sanders contemporaneously with this Order reflecting a two-month increase in that downward adjustment. All of the other relief he requests in his motion, and the grounds therefor, must be dismissed.

Under Rule 11(a) of the Rules Governing Section 2254 Cases, "the district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." This Order is partially adverse to Sanders, so the Court must undertake the Rule 11(a) analysis. To obtain a certificate of appealability under 28 U.S.C. § 2253(c)(2), Sanders must make a "substantial showing of the denial of a constitutional right" by establishing that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal citations omitted). As the Court's discussion above makes clear, no reasonable jurists could debate whether Grounds Two, Three, or Four of his petition have merit. As a consequence, the Court is compelled to deny him a certificate of appealability.

Accordingly,

**IT IS ORDERED** that Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Docket #1) be and the same is hereby **GRANTED in part** and **DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that the Clerk of the Court issue an amended judgment as to Calvin V. Sanders in Case No. 14-CR-28-1-JPS in accordance with this Order;

**IT IS FURTHER ORDERED** that Petitioner's motion to correct a clerical error in his sentence pursuant to Federal Rule of Criminal Procedure 36 (Docket #3) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Petitioner's motion to proceed without prepayment of the filing fee (Docket #2) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that a certificate of appealability as to Petitioner's petition be and the same is hereby **DENIED**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 27th day of July, 2018.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge